Next case before us is 24-1134, Webster v. CHP Correctional Health Partners. May it please the Court. Good morning. My name is Brent Owen, and I'm here on behalf of Appellant Ronald L. Webster. We are appealing an order granting summary judgment against Mr. Webster on his 1983 claims. We seek reversal of the summary judgment order for two reasons. First, the district court erred in the legal standard that it applied by requiring a subjective proof of Colorado or of Correctional Health Partners' subjective intent to deprive Mr. Webster of his constitutional rights. And second, regardless of whether the Court agrees with me on the legal standard issue, there are factual issues that precluded the grant of summary judgment, and the district court improperly weighed the evidence and essentially decided against my client where there are facts in the record that would have supported a trial to a jury. I'd like to just discuss first the legal standard that applies to Mr. Webster's claim. Because this is a claim against an entity, Correctional Health Partners, there are three elements, and we are required to prove that there was a disputed, genuine disputed issue of material facts on those three elements. First, the existence of Colorado Health Partners' official policies or custom. And just to detour a little bit on this point, the briefing has, there's been a significant amount of focus on the other side that there's, that this is not the official policy. And what we're talking about here in concrete terms is Mr. Webster suffered a knee injury in 2012, suffered a hip injury as a result, at least in part of that knee injury, ultimately required a hip transplant. And he didn't get that hip transplant for a very long time. And not being able to have the hip transplant caused him serious pain, essentially meant that he couldn't move. He couldn't take care of himself. He's a 60-year-old man, and he's relegated to essentially not being able to function, even in the prison setting. So the policy that we challenge isn't the official written policy, because, of course, you could write a policy that meets the constitutional requirements. That is not what is required by the Eighth Amendment. What we are challenging is Correctional Health Partners' consistent denial of MRIs and then delay in authorizing surgery. But don't you have to show that an employee of CHP knew and disregarded the risk here? I mean, that was the basis of the district court's holding, as I understood it. Why is that wrong? That's incorrect, because this is an entity claim. So we aren't required in an entity claim to show that a specific individual. And I think the exact language... All Monell claims are exempt from showing an individual violation? No, I'm not saying that. I'm saying that a Monell claim where you allege that there's an entity that acted. And I think the quote in Krausen, I believe, is you can't achieve with two what you could have done with 20. So in other words... So if you're relying on a systemic failure, that's what you're saying, right? You don't need to point to one employee because it's a systemic problem. Don't you need to plead that? Well, at this stage, this is a summary judgment issue. So we're here not on a motion to dismiss. The pleading is a pro se pleading. It was Mr. Webster in prison trying to draft a complaint. He was ordered by the district court to amend the complaint to address the theory that you described. He's not an attorney. I don't know. We couldn't have known that you needed to do the systemic failure. So two points, Your Honor. First, it doesn't matter because we're on here not on the pleadings. We're here on the factual record that we submitted to the district court. And the factual record that we submitted to the district court had evidence that there is delay, systemic delay, in ordering those MRIs which cause, in this instance, cause Mr. Moore to suffer debilitating knee pain. And even worse, I think, in the factual record is the five months where he wasn't able to get hip surgery and he could barely stand or walk. The second point is the pleadings did reference it. It wasn't particularly well articulated. But to hold that against him at this stage is really unfair when we have factual record. Those issues merge. You try the case on the merits of the facts, not on what's in the plea. So I understand that we're not at the pleading stage, but don't. Is it your position that this case was litigated through summary judgment as a systemic case? Yes, that's how we briefed it to make that point. We submitted expert, doctor expert testimony describing the combination of factors that led to Mr. Webster's pain. So, yes. In any event, he's got to have suffered a constitutional violation, right? Certainly, certainly. He has to have suffered a constitutional violation. But I don't know that the injury is even disputed at this point. I guess there's some debate that maybe now he's healed, but I think the case law is pretty clear that if you suffer for five months and you are not able to stand or walk or take care of yourself and you're in debilitating pain. You're looking at delay, right? Correct. Yes, Your Honor. Let's go to your MRI claim because I'm somewhat confused by your MRI claim. Apparently, he needed an MRI to identify soft tissue injury. He did have an x-ray. The x-ray indicated bone-on-bone arthritic pain. He eventually got the hip replacement and it resolved the issue, which suggests that, in fact, it was bone-on-bone pain that he was experiencing. What difference would an MRI make? I mean, you have to show that somehow the lack of an MRI had some consequences here, and I don't see anywhere in the record talking about that. I don't see a single medical testimony about what difference an MRI would have made. I'd point, Your Honor, and I believe it's at Volume 2, 134, to the expert testimony from Dr. Lindquist that we submitted that discussed how the delay here is in part because— I'm talking about your claim about they don't allow MRIs. I'm not talking about the delay. I thought, Your Honor, I was trying to understand how that harms him. So I'm a little confused by your question. Well, you're saying they had a custom or policy to deny MRIs, right? Yes. We have a plaintiff here who suffered from a bad hip based on bone-on-bone contact, which is painful, and he was approved eventually for the hip replacement, and the hip replacement resolved it. The bone-on-bone friction was shown through the X-ray. He was diagnosed based on the X-ray. He was treated based on the X-ray, and his condition was resolved based on the X-ray and the hip replacement. What difference would an MRI do to identify soft tissue injury if what was treated and resolved his pain was a hip replacement? I'm a little confused by that. Respectfully, Your Honor, I think one middle step there actually misses where there was injury suffered based on the MRI. So generally the chronology is correct, but the treatment that he was instructed to give when he had just had the X-ray was Tylenol and movement and riding a stationary bike, which exacerbated the pain. They didn't have the specific detailed information they needed to do the fix that they did eventually reach. My understanding from both the expert testimony that we submitted and the medical records from at least some of the folks that Correctional Health Partners relied on was that those treatments weren't correct. So you take a person who has... That's malpractice. That's not deliberate indifference. Well, it's deliberate indifference if the person in charge of approving the thing that you need to have doesn't approve it. So you can't know that that's the issue until the MRI is approved. Okay. Turning to your delay claim, what is your best evidence that this was an official custom or policy of CHP? I point, Your Honor, to the... I'll find the site and the record here. I mean, in narrative terms, in the specific record sites, Volume 2, 55-56, 58-127, 129, and 132. And then I think in the summary judgment briefing, so digging into the actual pleadings, Paragraph 19, Volume 2, 173, you have a record of the error in the submission and occupation of the treatment. And it's not corrected until January. With correctional health partners takes a position that they approved it and fixed it the same day. The district court, I believe, relied on that in finding that our delay claim should be dismissed for summary judgment. I think that's a disputed factual issue. That's not a clear cut. The district court judge is essentially weighing that evidence, and that's improper at this stage. Well, in order to show... I mean, you don't have a written policy on delay, right? Correct. Okay, so we're looking at an informal customer policy. And as I understand the law, you can show it by a pattern of tortious conduct, or you can show that he's actual constructive notice by the municipality. And the only pattern that I see is Mr. Webster himself. Well, you have Mr. Webster's testimony that other providers, that the providers who are talking to him, who are treating him, are telling him these will not be approved because they don't ever approve these. Does it matter that that's hearsay? No, that was forfeited below. That was not... You think it's forfeited below for us to look at whether the summary judgment record is sufficient to create an issue of fact? I think that even if you are inclined to consider it as... What if I don't think it was way below and that I can consider it? What difference does it make? What difference does it make as a factual matter? Yeah. I think it demonstrates that there's a pattern outside and beyond Mr. Webster. We also cited to other cases where you have this pattern. It's a bit of a catch-22. Well, you cited to four cases the other lawsuits, but interestingly none of them were resolved in favor of the plaintiff. Well, fair enough, but that doesn't speak to whether or not there is a pattern. Well, it's hard to imagine that these unsuccessful claims against CHP would have put them on notice. Well, the question is whether or not objectively there was delay in obtaining the MRI. And the inquiry is based on whether or not the MRIs were not being given. And there's an extensive paper record. I mean, this case starts with a knee injury that occurs in 2012. He doesn't get the hip surgery until January of 2019. I would like to reserve the remainder of the time if there's no more questions. Thank you. Thank you. May it please the Court. Andrew Ringel on behalf of the defendant, Appley Correctional Health Partners. Let me start factually, Your Honors, because I think that would be helpful for some of the questions that I heard from my colleague. There are two issues here. One is the hip. One is the knee. The MRIs relate to the knee, not the hip. The hip is solely the delay between the context of when the provider incorrectly submitted the surgery for the hip as a knee surgery, when that was corrected, and the delay that ultimately resulted in the surgery. The longest period of delay that you have that exists is two months. Let's go back to what the district court did related to that delay, and it goes to Judge Rossman's question and also Judge McHugh's question. There has to be an underlying constitutional violation, regardless of the theory that we're proceeding under. And I don't think this was appropriately litigated as a systemic theory under you still need to meet the Eighth Amendment Estelle standard. Do you mean for an individual, or can the entity have been deliberately indifferent in adopting a policy that was known or could easily predict that it would result in constitutional violation? So let me parse that a little bit, Your Honor, because as the court knows, deliberate indifference in this context is used two different ways. And so the first way of deliberate indifference is in the Eighth Amendment sense, the substantive requirement of the Eighth Amendment. Croson and the systemic cases suggest you don't have to identify the individual person who violated your constitutional rights. You can identify collective people from an entity who violated your constitutional rights, but you're still having to establish that those people collectively had the intent that meets the requirement under the Eighth Amendment. You don't get to pass that up and just go right to the deliberate indifference in the sense of a Monell claim, Your Honor. That's the flaw that exists in the theory here. You still need an underlying constitutional violation. The district court correctly determined that that doesn't exist. Back to Judge McHugh's question related to custom policy and practice in terms of the delay, I think that's exactly right. First of all, I think with the delay, at best, what you have here is negligence. And so you can't meet the substantive standard under the Eighth Amendment as a negligent claim. As the court is well aware, 1983 claims require something more than negligence as a general matter. But an Eighth Amendment deliberate indifference claim requires actual knowledge of the issue and the determination of drawing the inference that there's a substantial risk of harm. That's in all of the cases related to the Eighth Amendment subjective standard. The court below got that correct. It also can't be a policy, Your Honor, because all you have with respect to the delay based on the misidentification of this as a knee surgery initially and then a hip surgery later is the one instance involving Mr. Webster. That is insufficient to create notice and deliberate indifference on a custom theory. And there's no evidence that anybody who might be a final policymaker for CHP was involved in that decision or had awareness of it, which would be the other way that you could get around it. Going to the MRI issues related to the knee, it's important to evaluate this in my judgment in the context of what the administrative review is. This is an initial decision by one medical director to deny these MRIs and make the determination that they aren't medically necessary. That decision is subject to two levels of appeal from a review by a different medical director with additional information provided by the healthcare provider and also the ultimate review by the chief medical officer of the Department of Corrections. So who has the final authority to make the treatment decision? Is it your client? No, it's the CDOC chief medical officer. So ultimately if a provider had determined they get the, the provider gets notice of the denial, the provider has the ability to say just like any insurance company, your provider can appeal denial of an insurance medical necessary medical necessity denial. It's the same kind of administrative process here. It goes first to another medical director to at CHP. Then after that it's the ultimate decision of the chief medical officer of the Department of Corrections. So from a causation perspective, which is an embedded element under 1983, you can't have causation for the initial decision. It's not a final decision. It's an interim decision that's never done anything with. Here you have the intervening decision of the medical, the healthcare providers not to appeal. That's what ultimately causes an injury related to the MRI denial. If there is an injury. Well, a delay in authorization from CHP would contribute, right? Wouldn't it? It would contribute, but the mechanism of the administrative process, your honor means it can't be causal because the steps are the,  you know, if you were going to, I suppose you could have an argument, your honor, if ultimately it was approved and you had the argument that the initial denial was so beyond the pale that there was no legitimate basis for the initial denial. Maybe you could have a deliberate indifference in that context. But what you run into then, your honor is the line of cases from this court that says differences in medical opinion, don't create an eighth amendment claim. That's the, the other context that exists here. Ultimately, this is a sort of a quasi medical review. You get the medical information, you provide it to CHP. They make a determination. What about the, the testimony from Mr. Webster that the reason the CDOC providers didn't appeal was because they felt it was futile because they were convinced that it was never going to be approved. So there are a couple of problems with that. One is the court, as you identified, it's potential hearsay setting hearsay aside, because I don't think that that's dispositive of this issue or there's other ways to make it dispositive. The, the, the provider manual is part of the record. It's part of the summary judgment record. It describes the process by which there's an appeal and the providers have access to that and they are supposed to use that. The problem with Mr. Webster's testimony is it doesn't identify a particular provider. It doesn't identify a particular denial. And most importantly, your honor, it doesn't provide any information that anybody from CHP knew that that was the attitude of the providers. And ultimately it's important to remember, this is a system set up by CDOC. What he's trying to use it for is to establish a custom and policy, an informal custom and policy. So if the, the providers, not CHP, recognize that CHP in fact had such a policy and it's just going to be denied, wouldn't that be some relevant evidence of whether a policy existed? Perhaps, your honor. But as I, my colloquy with Judge Rossman, you go to the next step of causation. So under the analysis, under Monell in both the municipal liability and the entity liability context, you need to have a moving force behind the policy or custom and the constitutional violation. Because of the way the system is set up, it isn't a moving force. It's the subjective opinion of a provider who, who makes a determination not to appeal. But how is that having evidentiary significance to create causation for some, for an entity that has no knowledge and has set up a system that's directly contrary to that information? It, it doesn't fit. And it, it, the other sort of overlay that I would add with that context is there would need to be in the subjective intent, requirement of the eighth amendment, sufficient knowledge by somebody at CHP that this was something that was happening. And then them failing to appreciate that that could create a serious risk for somebody like Mr. Webster, and then not doing anything about it. But the evidence is directly to the contrary. They publish the provider manual, they provide the provider manual to the providers. It sets up a pretty easy system for purposes of this kind of denial. I don't know if this fact is in the record, but I know it from my work for CHP for a long time. The denial itself is going to inform the provider that they have the ability to appeal. And so maybe, you know, they're doing that. Sometimes providers don't appeal because they agree with the decision. And there's no evidence in the record at all from any of these providers related to what their thinking was and what was going on there. If you need an individual who had objective and subjective knowledge and was deliberately indifferent, what's the purpose of a systemic claim? Why not just go after the individual? Well, I don't know, Your Honor. And, you know, there are some pleading issues in this case, as the court identified. I think it's important to understand, I don't think systemic was pled. Assuming it's before us, because we've been discussing it. In Carson, our first case was Garcia. In Carson and in Carson, there's no discussion in either of their cases about some individual who had the requisite subjective and objective knowledge, is there? But those are not Eighth Amendment claims, Your Honor. Those are different contexts. And as the court knows, you have to evaluate whether there's a constitutional violation in those different contexts. My memory is, and it's been, I don't know this for a fact, but my memory is Carson is a Fourth Amendment case. And so, if you're dealing with the Fourth Amendment objective reasonable standard, you're looking at the totality of the circumstances differently than you would be in an Eighth Amendment. But Carson's an Eighth Amendment case. Well, if Carson stands for the proposition, nothing in Carson states that you don't have to have an underlying constitutional violation. You still have to have an underlying constitutional violation. That's black letter law from Monell. There is no sort of systemic exception to, you may not have to, you may be able to create the underlying constitutional violation based on the systemic issue, but you still have to have an underlying constitutional violation. Well, I'm trying to understand, you know, the district court did not cite any of the legal principles that attend to a systemic violation, right? I mean, so I'm trying to discern based on just what the district court has told us in its order, how it understood how we should be thinking about the constitutional claim. And so, is there a reason why that you can think of why the district is very able district court would not have discussed Croson? Is it because it doesn't apply here? I don't think it applies. And I don't think that there was a systemic claim pled. The way that I always understood this at the, at the district court was this was a standard eighth amendment claim against correctional health partners. Our law does say that if you, you have to allege a systemic claim. And here we have a pro se individual who is not familiar with the intricacies of our jurisprudence. And, and by the time we get to summary judgment, he's counseled. So how should we be thinking about that? So factually procedurally,  that's not entirely correct. Okay. So the, it is correct that the plaintiff pro se filed a complaint. Then in screening, then United States magistrate judge Gordon Gallagher screened it and directed him to file an amended complaint. Then council enters their appearance. We file a motion to dismiss council responds to the motion to dismiss. So at that point in time, council was on the case. If council believes that there's a systemic claim here, council has every ability to plead the systemic claim. The, the motion to dismiss was denied procedurally because we went, there was no stay discovery happened and we filed a summary judgment while the motion to dismiss was pending. And so ultimately the court ruled on the summary judgment, not the motion to dismiss, but it isn't correct to think that there was a, it was only pro se at the time that that battle was joined. Your Honor. I see my time's expired. Thank you. Thank you. Just to address a handful of issues that came up. I think there's been a lot of focus on Mr. Webster's testimony, whether or not it's hearsay. I would like to flag that there are other instances in the record of providers noting, providing evidence that correctional health partners is not inclined to grant the MRIs. And so that informed the, our argument here specifically at volume two, one 64 and one 50 that's Mr. Griesman and then Ms. Hibbs testimony at one 79 on the hip replacement. I'm not entirely sure where the two months come from. My understanding of the timeline is that September 25th, 2018 after essentially arguing with correctional health partners to try and get some relief and the providers fair, fair enough. He was, he was sent to get a knee surgery that was incorrect. That was corrected October 25th, 2018 by the provider and that's at one 29, one 32, one 29 and one 32. The surgery doesn't happen until January 7th, 2019. So it's, it's a bit longer than what's said. I just want to emphasize that there's, there's delay here. And under the law, that time you're suffering and the fact that there is a fact dispute about whether or not it was authorized is enough to survive summary judgment. And then respectfully, Garcia and Crowson are both eighth amendment claims. My understanding is that they're both eighth amendment claims. Garcia is a 1985 claim. You have a drunk inmate who's taken in and the official policy, which clearly complies with the constitution is to make sure that this person has taken care of the actual in effect policy is that they don't do anything and the individual dies and there's liability. It's the point of having liability for systems, because if you always have to point to a certain person, it actually rewards no one knowing what's going on. And Crowson is somewhat similar to more recent case in 2020. I can't pronounce the medical term that the person went through, but he went into shock. They thought it was drug and alcohol withdrawal. In fact, it was, he was having, you know, suffering. And again, you have a, you have systems that don't pay any attention to it. So if, if you can come in and say, well, constitutional rights were violated because no one was paying attention, then that's quite a loophole for the eighth amendment. Thank you for your time. Thank you. We will take this matter under advisement. We appreciate your argument and your briefing.